Good morning, Your Honors. John Payer for Mrs. Nolan. If I may, I would like to reserve five minutes for rebuttal, please. Just keep an eye on the clock. Thank you. There are three issues before the Court today. First, the trial judge held that the loan was not a consumer loan. Second, she held that the foreclosure counterclaim was not an actionable communication under Guerrero. Both rulings are incorrect. Finally, the court did not rule on the issue of whether the counterclaim violated the FDCPA, but we ask this Court to do so because the undisputed facts show that the amounts claimed were unsupportable, confusing and misleading, and therefore violate the Act. I notice you did not mention the IAED claim. Have you preserved that for our review? Yes, but I am going to leave that to our briefs. Your briefs do not give us any authority other than stating the elements of the claim. I just do not think I have time to go into that on this. I am sorry. Thank you. Regarding the first issue, the undisputed facts... Let me ask you a question before you get there. As I understand it, you filed this action in federal court? I did not. The plaintiffs did. The plaintiffs did. Correct. Were you his attorney? No, I am only the attorney on the appeal. So, the plaintiff filed this action in federal court and the plaintiff alleged a violation of the FDCPA, right? Correct. So, given that it was done there, then there came a counterclaim, right? Correct. It was a compulsory counterclaim, right? Correct. So, there is no question that this counterclaim had to be filed? We have no problem with that, Judge. We agree they have a right to file a counterclaim. The problem is the counterclaim has to be... Oh, sorry. And as I understand it, there is also no dispute that this counterclaim was sent only to counsel? No, that is not disputed. That is disputed. Well, what do you mean? It was only sent to counsel. It was counsel or the recipients and or electronic filing. The filing was sent to the entire world. It was on the internet. Well, it was filed in the court, right? It was filed in the court, but it is available to Nolan immediately. It is available on the internet. Just a minute. Just a minute. I understand your argument. I am just trying to figure out the facts. Right. As I understood the facts, the counterclaim was filed. It was a compulsory counterclaim. It was filed the way it needed to be filed. They did not specially serve the plaintiff. The only way anybody would know about it is the same way everybody knows about any counterclaim. Right. So, there is no dispute that Nolan only learned about this counterclaim through his counsel, right? That is how she learned about it, but it was sent to her. It was sent to his counsel, and then counsel gave it to Nolan.  So, if I look at Guerrero, Guerrero would say, that is fine. As long as you only send it to counsel, it is okay. But that is not what happened. Well, it is what happened. They filed the counterclaim, and frankly, then the attorney sent it to the client. That is not really correct, Judge, respectfully. When you file a counterclaim, and the courts in Obdusky after Guerrero have said that, when you file a pleading, it is subject to the FDCPA, and in this case, it was sent to the whole world. It was sent to the whole world. It was sent to the court. The whole world had a chance to look at it. That is right. The whole world had a chance to look at it. I just want to make sure I am understanding your argument. It isn't as if they sent them to Nolan, just that when it was filed, everybody and their dog has a chance to look at the filing. Exactly. And the idea behind Guerrero... That is the same thing that happened in Guerrero. No, it is not. Let me explain. In Guerrero, the only person that ever saw that was the attorney and the client. Well, but just a minute. In this case... Everybody had a chance to see it. No. They just didn't see it. No, they didn't. Well, they were all filed. Guerrero wasn't a filing. In Guerrero, it was a letter. In this case, it is not just a letter. In this case, it does go to... So the fact that it is a public filing is going to make it so Guerrero is not appropriate. That is correct. You have to extend Guerrero... And what case says that? You would have to extend... Give me the case that says that. That says what? That just because you file the counterclaim, it is automatically subject to a violation of the FDCPA. Well, it is not automatically a violation. It has to not be accurate. But it does come under the FDCPA. For example, Obdusky said foreclosure is a means of collecting a debt. Have you got a case? Obdusky is one. Well, I read that. Avery B. Gordon is another. That isn't on point either. Better give me another one. Well... I mean, I go to Donahue. In Donahue, it was directly served on the defendant, made it actionable. But the point of Guerrero is that the lawyer can protect the client because he is the only one that gets it. And then he can tell the client whether it is good or bad or this or that. In this case, the lawyer could not protect the client because it went out to real estate agents. It went out to credit reporting agencies. What you are saying is the very fact that the counterclaim was filed as it needed to be, couldn't get out of it, makes them actionable. Correct. And the reason... And I am trying to get the best case for it. I have got the two cases you said. If those are your best, I know where you are going. Then I think you have got a problem. Well, you have to look at Donahue. I did look at Donahue. In Donahue, the complaint went directly to the debtor. Right. Correct. So it did not fall into the Guerrero exception. Right. And Donahue said we have recognized a limited exception to this rule in Guerrero. Guerrero is an outlier, really. Not many other circuits have followed Guerrero. It is the law in this circuit, obviously, even though it was a 2-1 decision. It is the law. Don't give us the business about that because this is our circuit. Yes, I am saying it is the law in this circuit. I agree. But the question is whether you want to extend Guerrero to pleadings that are filed and are available to the entire world. Guerrero was not a pleading. Would that apply to an appeal argued before us? This is being live streamed. An attorney comes up and disputes the collectability of a debt. That is available to everyone. Does that trigger the FDCPA? I don't know. We have to think about this. It sounds like you are adopting a rule that anything that can be perceived rather than received by the debtor would count for this. I am saying that anything that is filed in the district court is open to the world. I assume that is true in this case, too, but it wouldn't happen if it hadn't already happened below. Isn't there a federalism concern here? Shouldn't we be reluctant to infer that Congress meant to regulate filings in state courts, absent some pretty clear indication in the statute that that is what they were setting out to do? I don't think it is a burden. I think Rule 11 requires that complaints be accurate. Are you referring to Hawaii procedural rule? No. It is up to the states to decide what kinds of filings they want to allow or not allow in their courts. Congress, in the exercise of its authority to regulate interstate commerce, maybe can regulate that, but generally doesn't unnecessarily. I think you see the concern. The Fair Debt Collection Practices Act regulates collection matters. The Heinz case from the Supreme Court long ago said that actions by attorneys fall under the Fair Debt Collection Practices Act. Abdulsky said that more recently. Donohue says the same thing. The question here is whether Guerrero, which was based solely on a letter, should be broadened to include pleadings that are filed and, again, are available to credit reporting agencies, to real estate companies, to lenders. The reasoning in Guerrero was that the lawyer could protect the client from adverse effects of this kind. That is not true here. Can I take you to your first issue of the consumer transaction? What is the transaction here? The underlying transaction was buying the home. But she lost the home. No. Then got it back. Did she not go through bankruptcy? She did. She put it up. She had agreed that the bank would take it, but they didn't. She never actually really lost the home. They didn't take it. We should be looking at it. When did she use it for personal use? From the very beginning. Slank is determinant of that issue. She bought the home from her mom, intending to use it for personal family use and have her brother live there because he was not fully able to take care of himself. She did use it for that purpose for a year and a half to two years, somewhere in that range. Then her mother died. Her mother had been helping her make payments. Her mother died. The money wasn't there. At that point, she decided that she had to rent the place. Has there ever been personal use since? I don't think so. The issue is what the original purpose of the transaction is. These fees, during bankruptcy, the discharge, all of the prior fees that had accrued against owning the house discharged. I suppose so. The clock starts again when she gets it back after bankruptcy. No personal use from then on. It wouldn't matter. The original purpose was for, and it's undisputed, and Slank says the same thing, it's undisputed that she purchased the home for family use. Any... Purchased, I think in purchased here, took out a mortgage to cash it out and then provide the funds to her mother. That was the purchase? I think so. Any maintenance fees and so on charged to the house, it's still, the original purpose was still consumer. But there are no fees at issue here that arise from her personal use of the property? That's not true. Even her own personal use. Any personal use since bankruptcy? Yes, family use. Her brother lived at the house for almost two years, and that's why she bought it. She did not intend at that time when she bought it to ever rent it out. And the fact that she did later, the cases are pretty clear that that doesn't change the original purpose, if that answers your question. Did you want to reserve? Yes, I did. We've got one more part, and this is about the IIED claim. Okay. And I just wanted to ask you one question about that before you sit down. I read through what you say is the authority for her IIED claim. What is your best case that would support that the conduct you've alleged is outrageous? Because I've looked for a case that was outrageous and tried to put it in comparison to your case. So I'm trying to give you your best shot. I looked at ENOCA. I didn't think that made it. So give me your best. I don't have anything for you on that, Judge. I'm sorry. All right. Thank you. Thank you. We'll give you two minutes for rebuttal. Good morning, Your Honors. May it please the Court, my name is David Hofteser. I'm here on behalf of the appellee defendant law firm Porter Maguire. Your Honors, the district court's entry of summary judgment should be upheld because the compulsory counterclaim at issue was, one, not an actionable communication under the FDCPA, and two, was expressly permitted by Hawaii law and the Hawaii rules of civil procedure, and therefore cannot be held to be an intentional infliction of emotional distress. In addition, Your Honors, the summary judgment can be upheld because Ms. Nolan failed to meet her burden of showing that the compulsory counterclaim was inaccurate, improper, or tortious. Your Honor, the core operative facts here are largely undisputed. Ms. Nolan does not dispute that she owed the association unpaid maintenance fees. In 2021, Ms. Nolan sued that association in the Hawaii Circuit Court, seeking a judicial accounting as to how much she owed, not disputing that she owed, but wanting to know, have the court determine how much that was. In response, as Judge Smith noted, the compulsory counterclaim was required by Hawaii rules, Civil Procedure Rule 13. Porter McGuire filed that on behalf of the association to preserve the right to foreclose and to pursue those unpaid fees. It is undisputed that the compulsory counterclaim was sent directly to Nolan's counsel and not to Nolan herself, and that's documented both in the Certificate of Service and also in the notice of electronic filing. In fact, Ms. Nolan confirmed at Excerpt of Record 43 that she only learned of the compulsory claim through her attorney. Now, that last point, Your Honors, about the compulsory counterclaim being sent directly to her counsel is critical, and that goes to this court's prior rulings in Guerrero and Donahue, which were discussed before. In Guerrero, this court addressed whether a communication sent to a debtor's attorney rather than to the debtor directly would constitute a protected or actionable communication under the FDCPA. And the court looked to the purpose of the FDCPA, to that consumer protection standard, and noted that when attorneys are involved, attorneys possess the degree of sophistication and education that the individual debtors might not. So therefore, the least sophisticated debtor standard that's used to address communications would not apply when sophisticated counsel is involved. And this court noted that when the debt collector ceases contact with the debtor and instead communicates exclusively with the attorney hired to represent the debtor, the act's strictures no longer apply to those communications. This court revisited the Guerrero decision in Donahue in 2010 and reinforced and reiterated that. And the Donahue decision is particularly instructive here because it addressed pleadings as the form of communication. In the Donahue case, there's a question of whether a pleading could constitute an actionable communication. As counsel noted, since the Supreme Court's Heintz decision, the actions of attorneys in debt collection and litigation could constitute debt collection. So the question addressed in Donahue is whether and when a pleading could be considered a communication that's actionable under the FDCPA. And what this court said is that in order to determine whether that pleading is an actionable communication, it's necessary to look at the identity of the recipient. That's a quote from Donahue at pages 1031 to 32. And the court in Donahue made a distinction between someone who, in that case, the debtor, who herself and not her lawyer, received the pleading directly. This is the opposite of the Donahue fact. So applying the logic and the reasoning of Donahue, this is the case where the pleading was not sent to the debtor directly, but instead was sent to her. But in Donahue, they talk about was the receipt of the counterclaim, that's where they're really going to, right? Was the receipt of the counterclaim solely Nolan's attorney if the pleading was publicly filed? That's the question. Understood, Your Honor. And I think what's important is that courts are courts of public record and are available to the public when the Donahue decision was decided. If all pleadings were, as a matter of course, going to be subject to the FDCPA, regardless of who it was sent to, there would be no reason for this court to have gone through the analysis and issued the ruling that it did in Donahue. It would be a matter, of course, that anything filed would be available to the public and therefore. What we're really doing is if we look at Donahue and look at solely Nolan's attorney, we're saying how strictly should we construe solely? Isn't that what we're really looking at? Yes, Your Honor. You're looking at the language from Guerrero. Guerrero said something's directed solely to the attorney. Now, what's interesting about the fact pattern in Guerrero is that that was a settlement offer, a settlement negotiation sent to counsel. Now, under the Hawaii Rules of Professional Conduct, that attorney was required to pass that information along to the client. It's the same when you're representing someone who is being sued or, in this case, receiving a counterclaim. The rules require that the person being sued be given notice. In that case, it goes through the attorney. Now, what's critical, though, because we're dealing with the strict liability standard of the FDCPA going to Congress's intent, the question is how does it protect the debtor? Is a communication, a pleading as a form of communication, if that's misleading, how is that impacting the debtor? Donahue said, look, if you file a pleading and it's misleading, if it misstates the amount of the debt and you give that directly to the debtor, that is an actionable communication. And attorneys can be subject to the FDCPA. I guess one of the problems I'm having squaring, and it may be that it's too late under our cases, but trying to square this with a statute is we've engrafted 1692C over 1692E. 1692E, the cause of action here is one relating to any misrepresentation made in connection with a debt. And that could be a misrepresentation to a credit rating agency or a landlord or something else. It could be for anyone. And so we're discussing this case in terms of was the communication made to the debtor, but that's just not an element. That's a gloss that we put from 1692C, this policy rationale of the attorneys. This was a communication. If the question is whether it's a representation, why should we look into whether the communication is necessary? Why is that a threshold requirement? I think that's, well, in part, it's what's been argued before the lower court, and that's what we're focused on with that, Your Honor, is that this was an alleged misstatement, a misleading communication as to the amount of the debt. Well, right. But that statement could be, I mean, for purposes of this, this is a 1692E claim, not a 1692C claim, right? Yes, Your Honor. It's E and F. So under E and F, those themselves don't have a communication to the debtor requirement. Understood, Your Honor. We're just kind of borrowing those from Donahue and Guerrero and kind of getting further along and deciding now that we're reading into an element here that a 1692E or F action is only actionable if the communication is made directly to the client under those circumstances? I think that, well, I understand Your Honor's point, the idea that you're not allowed to publish the debt to someone who's not entitled to it. I think to that point, Your Honor, again, not something that was argued in the lower court. But here now, in this case, going back to Guerrero, in Guerrero there was a concern from this court that someone could use the FDCPA as both a shield and then turn around and use it as a sword to try and pursue, I think they called it a federal battle royale over a technical violation. In this case, Your Honor, it's undisputed that Ms. Nolan raised this issue with the court. She sued the association and said that this debt that they're trying to ask me to pay is incalculable and it needs to be calculated. She's already addressed this debt. And the idea that the FDCPA should preclude somebody from responding to that and asserting a mandatory compulsory counterclaim would render the whole process. Right. But we're just kind of backed in with our cases then to an inquiry as to whether this was a communication under a statute that is not being brought as opposed to asking whether this is in connection with a collection of a debt for the mandatory counterclaim? Well, I think the law has addressed the plea in the form of a communication. But I think to your point, Your Honor, and this is something that was raised in one of the earlier arguments today, jumping ahead a little bit to the materiality and alleged misstatement, Ms. Nolan has never done the math and has never actually articulated how or why that compulsory counterclaim was a misstatement, how it was misleading. Can I ask a question? Something else I don't think you disputed is I'm trying to figure out what's your response to the fact that the original transaction was for consumer use, and so that is attached to the property even through bankruptcy. The current fees are a debt arising from consumer use. Yes, Your Honor. So under, well, I think two things. One, I think it's helpful to frame that inquiry in the context that there was a motion for partial summary judgment as well as a motion for summary judgment. I think that the district court judge, when she was evaluating that argument, was looking at the burden. And it's unquestionable that Ms. Nolan bore the burden of demonstrating that this was an actionable consumer or protected consumer debt. So going to the slang guidance from this court, we're looking at the totality of the circumstances, the transaction as a whole, a substance over form inquiry. And is that totality to be measured? Do you agree with your friend that that totality is to be measured at the time of the original transaction? Yes, Your Honor, I do. So bankruptcy has no impact on it. It's just a coincidence that it happens to be the same property. Well, you know, that's an interesting question. It's something I don't think this court has addressed. By law, any debts that existed prior to discharge no longer exist. I agree with you, Your Honor. And I couldn't find a case that said, well, when you reacquire property through bankruptcy, if you choose to continue to hold it, is that a reinitiation? Is that a separate? I haven't seen case law on that point. Okay, so I take your argument to focus on the original transaction then. Why is that not for consumer use? The only – let me know if I'm missing anything, but the only thing in the record we have is it was purchased from mother for brother. Well, I think the use of the word record is important there. I do think the transaction as a whole is relevant per slink, and that's one of the ways that that bankruptcy analysis is helpful. But what we have on the one hand is Ms. Nolan's self-serving declaration, where she says that her mother gave me title to this property. It was a $0 transaction. At some point after the title transfer, she took out – she claimed she took out a loan. She gave the money to her mom. Well, that's more than just kind of speculation or conclusory statements. You won summary judgment on it, so we have to read it in the light most favorable to Ms. Nolan. Yes, Your Honor. So for the motion for summary judgment by Porter-McGuire, yes, light most favorable to Porter-McGuire. On the motion for partial summary judgment from Ms. Nolan, the opposite. But what we have on one hand is Ms. Nolan's self-serving declaration without any documentary support, so no transactional documents, no bank records, no tax returns as to how this was – Do you dispute that she bought it from her mother? We know that she took title. Do you dispute that she gave it to her brother to live in for a couple of years? I don't know. I don't know if her brother was there or not. Aren't we kind of stuck with that for purposes of the slank analysis? I think you've got what she says, right? There's no evidence that her brother actually was there. What we have on the other hand, though, Your Honor, is how the actual use was done, the substance of reform. So what we have is her acknowledgement that after she acquired title, the mother was still responsible for the maintenance fees. So it's a question of when she incurred that responsibility. We also know that after she acquired title, she began asking her brother to pay rent after her mother died. When he could not pay rent, he was ejected. So this was his forever home, supposedly. And as soon as he couldn't pay rent, she started renting it to someone else who could. How low is the timeline here between time zero, the transaction that we're all looking at, and when what you allege is a business decision was made to eject her brother? I believe she acquired title, I want to say, in October of 2006. And my understanding is that around mid-2008 was when she started renting it out commercially. And it was used exclusively for commercial purposes since then. And why are you taking the view that the relevant transaction is the initial purchase rather than each year dues come due, and then there's sort of a separate transaction each year that you're living there and you owe the dues? Yeah, I understand the point, Your Honor. My understanding is from the Slank decision that the inquiry focuses on the initial intent. And so that's what we have in this court, is that the initial intent matters. And to Judge Johnson's point, when someone declares bankruptcies and wipes the slate clean and then starts incurring additional debt, it does seem like that might be a distinction or a break in that chain. But the inquiry under Slank is to the original transaction. Slank involved – what were the debts in Slank? It was just the homeowners. I believe so, Your Honor. So here we've got – but you don't dispute there are also homeowner fees here arising from – No, this was – the debt at issue is exclusively those homeowner maintenance fees. At Slank dealt with a backhoe. It was a – All right, sorry. See – Yes, Your Honor. I was going to say it seems to me when I was reading the District Court decision that the District Court appeared to adopt a per se rule that collection efforts on rental properties are not actionable. Do you agree with that? Well, I think – Not actionable under the FDCPA. That seemed to me what the District Court was really saying. Do you agree with that? Well, I see my time is up. I'd like to respond to your question. Let me answer. He'll let you respond, even though I'm a yahoo on the side. Go ahead. Okay. Well, the statute for the FDCPA makes clear that the protected debts are only those debts incurred primarily for personal, family, or household use. I understand that. And so extending that to someone who has a commercial rental property, the courts have found that that is not – even though it might benefit someone personally to get money, to get income, that is not a personal, family, or household use that would be protected by the statute. So looking to the Johnson case and there's another one with a K that I'm blanking on, the Kitamura case, the courts there said, well, when someone has used a property exclusively for that rental income, it's not personal. Unless you have any further questions about the IAD, I see I'm out of time. All right. Thank you. Thank you, Judge. Real quickly, whether they have a right to file a counterclaim is not the issue. The intent of the sender of the communication is not the issue. It's the effect and whether the borrower would be protected. In this case, unlike Guerrero where the borrower was protected because it was only a settlement letter, in this case, the borrower was not protected because the communication went to credit reporting agencies, lenders, realtors, and so on, and to the borrower herself. Regarding the consumer issue, our case is way stronger than Slink. Rob Slink got that backhoe and his business was a construction company. He bought the backhoe. His declaration said, I only used the backhoe to build my house and afterwards I sold it. So even though he had a construction company, the court held that his undisputed declaration said what it said, and it was for personal and family use. Same here. Mrs. Nolan's declaration is undisputed. She said it was for her family, for her brother. That's the original purpose, and that's the relevant issue. Do you have anything else? It appears not. Thank you so much, Judge. Thank both counsel for their helpful arguments. The case is submitted, and we are adjourned. All rise.
judges: SMITH, MILLER, JOHNSTONE